JEFFREY F. KELLER (SBN 148005)
jfkeller@kellergrover.com
CAREY G. BEEN (SBN 240996)
cbeen@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California  94103
Telephone: (415) 543-1305
Facsimile:  (415) 543-7861

TATIANA HERNANDEZ (SBN 255322)
tatianahernandezlaw@gmail.com
**LAW OFFICE OF TATIANA HERNANDEZ**
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 623-2089
Fax: (310) 388-0639

Attorneys for Plaintiff
NANCI QUINTANA GOMEZ

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCI QUINTANA GOMEZ, individually and on behalf of classes of similarly situated individuals, <br><br> Plaintiff, <br><br> v. <br><br> GUTHY-RENKER LLC, <br><br> Defendant. | Case No: <br><br> CLASS ACTION <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

COMPLAINT FOR DAMAGES AND INJUNCTIVE
RELIEF

Plaintiff Nanci Quintana Rodriguez, on behalf of herself and a class of similarly situated persons, brings this class action against Guthy-Renker LLC ("Defendant"), and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## I.   INTRODUCTION

1.   "Thou shalt not limit thy upside."   According to defendant Guthy-Renker LLC's ("Defendant") website, that is one of the "10 Commandments" by which Defendant operates.[1]   In furtherance of that commandment, Defendant states that it will look for products that "sell indefinitely to the largest and most reliable audience possible."[2]

2.   In following its commandment Defendant not only looks for products that it can sell indefinitely to consumers, it also engages in a systematic fraudulent scheme to charge consumers for its products when Defendant is not authorized to do so.  Defendant systematically and uniformly employs a single fraudulent scheme to defraud the entities it employs to take electronic payments from its own customers.  Through this scheme, Defendant makes unauthorized withdrawals from the credit and bank accounts of consumers, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.

3.   Defendant's scheme is deceptively simple.   Defendant requires consumers to provide credit card or debit card information at the time they make any initial purchase of Defendant's products.  Defendant then uses that credit card and debit card information to automatically enroll them in supposed "continuity program" memberships, pursuant to which Defendant automatically sends them its products on what is supposedly a 90 day periodic interval.  After consumers call to

---

[1] *See* http://www.guthy-renker.com/about/10-commandments/.

[2] *Id.*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

cancel, Defendant continues to charge their credit and debit cards for its products, despite the fact that it does not have authorization to do so and it is prohibited from making such charges under the rules of the electronic payment networks through which it processes its credit and debit card transactions.

4.     Post-cancellation charges are not the only practice that Defendant has used to keep its upside unlimited.  Defendant also uses consumers' credit card and debit card information to make other unauthorized charges.  Defendant offers consumers "90 day supplies" of its products to be charged to them on a "per month" basis.  In reality, Defendant charges consumers for its products on intervals of 28 days or less, and ships its "90 day supplies" of products on 84 day intervals. By charging them at a greater frequency than they authorized, Defendant squeezes a thirteenth "monthly" charge to consumers' accounts each year, exceeding the "per month" charges for which Defendant obtained consumers' authorizations. These extra charges serve no purpose other than to make additional profits for Defendant.

5.     Defendant also uses consumers' credit card and debit card account information to make unauthorized charges to consumers for products that consumers did not order, usually Defendant's other product lines.  In short, Defendant treats its possession of consumers' credit card and debit card information alone as authorization to make charges to consumers in its effort to obtain continually increasing profits in the "sale" of its products.

6.     In essence then, the "largest and most reliable audience possible" identified in Defendant's commandment is the audience from whom Defendant has captured debit card and credit card information.  Once Defendant has captured that information, Defendant can reliably charge consumers' for its products, regardless of whether they have authorized or agreed to such charges.

7.     Defendant's use of consumers' credit card and debit card information after cancellation and without authorization constitutes a fraud on the payment processor it has contracted with to process its credit card and debit card

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

transactions, as well as a fraud on the other participants in the electronic payment networks that Defendant uses to obtain payment from consumers' accounts. Defendant's conduct of defrauding its payment processor is the direct means by which Defendant has been able to cause consumers to make payments to Defendant which they never authorized.   Use of the electronic payment networks is essential to Defendant's scheme to extract the sums Defendant collects from consumers' credit cards and debit cards.   In fact, Defendant exploits the very design of the electronic payment networks to carry out its fraudulent scheme.   Designed to quickly and efficiently process millions of transactions on a daily basis, the electronic payment networks do not examine each individual transaction.   Instead, the payment networks rely on each participant in the network to follow strict sets of rules governing use of the network, including to process only transactions for which valid authorization has been obtained, agreeing not to process transactions that are fraudulent or should be known to be fraudulent, not processing transactions after a consumer has requested cancellation of the charges, and to follow all state and federal laws that may be associated with the transactions.

8.     As the party initially submitting transactions into the payment networks, Defendant is required to obtain consumer authorizations for all charges that it submits to the electronic payment networks for payment.   Defendant must also represent and warrant that, among other things, each transaction it submits for processing complies with all applicable laws, the rules of the card associations that govern use of the electronic payment networks, Defendant's agreement with its payment processor, and FTC regulations.   Additionally, Defendant is required to represent and warrant that it will always prevent and never allow its transactions to violate applicable laws, the rules of the card associations that govern use of the electronic payment networks, Defendant's agreement with its payment processor, and FTC regulations.   Even a single violation of these representations and

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

warranties is grounds for its payment processor to terminate its payment processing agreement with Defendant.

9.     Once Defendant's transactions are transmitted to Defendant's payment processor, the payment processor vouches for the transactions and passes on the representations and warranties about each transaction that it got from the merchant to the next participant in the electronic payment networks.  Accordingly, and as further set forth below, each time Defendant submits a post-cancellation or otherwise unauthorized transaction to its payment processor for processing, and into the electronic payment networks, it is fraudulently giving its word and representing that the transaction is in compliance and appropriate for processing.  It also fraudulently induces its payment processor to complete the transaction and obtain the requested charges from consumers' credit card and bank accounts.

10.     Ultimately, Defendant's fraudulent use of the electronic payment networks directly harms consumers.  Not only are they deprived of control over the credit card and debit card information, but ultimately it is their accounts from which Defendant takes the unauthorized charges.  The payments to Defendant occur without any involvement of consumers, other than their provision of their card information to Defendant.  The injury to consumers occurs automatically through the electronic payment process initiated by Defendant's false representations to the payment network participants.  While the injury to each individual consumer resulting from Defendant's practices is small, the scheme taking from thousands of credit card and debit card accounts has led to substantial unfair, unauthorized, and fraudulent profits.

11.     Accordingly, Plaintiff brings this action on behalf of herself and all other similarly situated persons who have been subjected to Defendant's fraudulent scheme.  She brings this action against Defendant pursuant to RICO; (b) California Business and Professions Code sections 17200, *et seq.*; and (c) California Business and Professions Code sections 17600, *et seq.*

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

4

12.     Plaintiff seeks, *inter alia*, an order certifying the proposed Classes and Subclasses under Rule 23 of the Federal Rules of Civil Procedure; an order appointing Plaintiff and her counsel to represent the Class; restitution, actual, statutory, treble and/or exemplary damages, injunctive and declaratory relief on behalf of Plaintiff and the Class; interest, costs, and reasonable attorneys' fees and any such further relief as the Court may deem proper.

## II.  PARTIES

13.     Plaintiff Nanci Quintana Gomez (also known as Nanci Rodriguez) ("Plaintiff") is an individual and a resident of the County of Los Angeles in the State of California.

14.     Defendant Guthy Renker LLC, is a limited liability corporation organized under the laws of the state of Delaware and headquartered in the County of Riverside in the State of California.

## III.     JURISDICTION AND VENUE

15.     This Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1331 because Plaintiff states claims that arise under the laws of the United States.  This Court also has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims are transactionally related to her claims arising under Federal law.

16.     This Court has personal jurisdiction over the Defendant.  Defendant is headquartered in this jurisdiction, has continuously and systematically conducted business in this jurisdiction, and has engaged in unlawful and unfair business practices directed at, and causing injury to, persons residing in this jurisdiction and throughout the United States.

17.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims at issue in this litigation occurred in this District.

///

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

## IV.    FACTS COMMON TO THE CLASS

### A.    Defendant's Continuity Programs

18.    Defendant is a massively profitable direct marketing company which discovers and develops consumer products in the beauty, skincare, entertainment, and wellness categories.   It advertises these products on television through commercials and infomercials using celebrity endorsers such as Cindy Crawford, Justin Beiber, and Jessica Simpson, and on the internet through websites that are dedicated to each product line.

19.    As of 2010, Defendant sold 15 different products.  These product lines include Proactiv, a line of acne cleansing and skin care products, Meaningful Beauty, a line of anti-aging skin care products, WEN Haircare, a line of hair care products, and Sheer Cover, a line of makeup products.  Combined, the products have been sold to millions of consumers around the world and result in annual revenue for Defendant of more than $1.5 billion.

20.    Defendant sells its products directly to consumers by telephone and over the internet through its websites.  It offers its products for sale to first time buyers in two quantities: a "30 day" supply and a "90 day" supply.  In order to purchase either size supply, consumers must provide Defendant with their credit card or debit card information.[3]   Defendant then systematically enrolls all purchasers in "continuity programs" pursuant to which Defendant automatically sends them "90 day" supplies of its products on a periodic basis and bills the credit card or debit card the purchaser provided for the initial purchase.

---

[3] As used herein, the term "debit card" means and refers to a debit card that is used for off-line debit transactions which do not involve consumer use of Personal Identification Numbers ("PIN")  to authorize the transactions.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

21.   When consumers select an initial 30 day supply of Defendant's products at price of $39.95 (for example) on one of Defendant's websites, Defendant describes its continuity program as follows:

> Starting 30 days from your order date, you'll receive a new 90-day supply of our [Products] every 3 months at the guaranteed price of $39.95 plus $3.99 shipping and handling **per month**, which **will conveniently be charged to the card you provide today unless you call to cancel**. **There is no commitment and no minimum to buy**. To customize this program or future shipments and charges, call customer service anytime at [1-800-XXX-XXXX].[4][5]

(Emphasis added.)

22.   On its websites, Defendant further describes the cancellation policy for its continuity programs as follows: "your membership in the program will remain in effect until it is cancelled... IF YOU WISH TO CANCEL YOUR PARTICIPATION IN ONE OF OUR AUTOMATIC REPLENISHMENT PROGRAMS, YOU MAY DO SO BY CALLING A CUSTOMER SERVICE REPRESENTATIVE AT THE NUMBERS LISTED ON THE WEBSITE UNDER CUSTOMER SERVICE."   Defendant does not inform consumers of any other timelines, restrictions, terms, or limits on cancelling charges to the credit card or debit card that they provide to Defendant at the time of their initial purchase.

23.   Defendant's television commercials and infomercials do not detail the continuity programs but instead simply state in tiny on-screen print that ordering "includes auto-delivery" and that consumers can "Cancel Anytime."   When

---

[4]   *See*   www.proactiv.com;   www.meaningfulbeauty.com;   www.wen.com;   and www.sheercover.com.

[5]   When consumers select an initial "90 day" supply of Defendant's products, Defendant enrolls them in similar continuity programs, but bills them only in a single amount once "every 3 months" rather than on a "per month" basis.   The language Defendant uses to describe this second type of continuity program is otherwise identical.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

consumers call to order Defendant's products, Defendant's agents and employees at its various call centers use substantially similar, if not identical language to the language set forth above to describe Defendant's installment payment continuity programs. The language is scripted by Defendant, and Defendant's agents or employees at its call centers read directly from the scripts and are not allowed to deviate from the scripted language when describing the programs.  Defendant further monitors its agents and employees calls with consumers to ensure that they do not deviate from the scripted language when speaking with consumers.

24.    When consumers enroll in Defendant's continuity programs online, they are required to check a box giving Defendant authorization to charge their credit or debit card pursuant to the terms stated in paragraph 21 above.  When consumers order Defendant's products over the telephone, Defendant never obtains any similar signed authorizations from them to charge their credit or debit cards as part of Defendant's continuity programs.

25.    Ultimately, Defendant sends invoices to all consumers with their initial purchases which state, in small print:

> "You will receive a 90 day supply of Proactiv (less free gifts) and it will be automatically replenished every 90 days at the same low price of [$X.XX] **per month** (any applicable tax and shipping and handling charges will also be applied).  You can easily adjust your shipment intervals or **cancel this continuous service at any time** by calling 1-800-309-4796.

(Emphasis added.)

## B.    <u>Defendant's Use of Electronic Payment Networks</u>

26.    In order to charge consumers' credit cards and bank accounts (via debit cards) for charges associated with its continuity programs, Defendant uses certain electronic payment networks.  The electronic payment networks utilized by Defendant (hereinafter referred to as "the payment networks" or "the electronic payment networks") are operated and facilitated by Card Associations such as Visa, MasterCard, and American Express.  They allow for the electronic authorization,

posting, and transfer of money from each consumer's credit card account or bank account (via debit card) into the merchant's account.

27.     The electronic payment networks have been designed to facilitate the efficient, nearly instantaneous and reliable transfer of funds for a wide variety of businesses in millions of transactions each day.  The payment networks have been designed for speed and efficiency in the manner of payment and not to scrutinize every transaction to verify consumer authorization.

28.     The electronic payment networks generally have four participants, other than the cardholder (i.e. the consumer using his or her credit or debit card for payment):

> (1) The merchant accepting credit or debit cards;
>
> (2) A payment processor which is also an acquiring bank or acts as an agent for an acquiring bank;
>
> (3) The Card Association network (i.e. Visa, Mastercard, etc.); and
>
> (4) The issuing bank (i.e. the bank issuing the member's credit card or debit card).

29.     Essentially, payment through the electronic payment networks works as follows: first, the merchant sends a batch of transactions in an electronic batch file to its payment processor.  Second, the payment processor sorts the transactions by credit card type (Visa, MasterCard, etc.) and sends requests for issuer authorization of the transactions to the appropriate card association network (*e.g.*, Visa or MasterCard).[6]  Third, the card association network then forwards the issuer authorization request on to the bank or financial institution that issued the cardholder's card.  Fourth, the cardholder's issuing bank or financial institution

---

[6] Issuer authorization is a term of art in the credit networks relating to guaranteed payment.  It is not related to the authorization involved in the warranties and representations in this case.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

sends an approval of authorization back through the network to the payment processor if there are sufficient funds available for the transaction. Fifth, once it has issuer authorization, the payment processor sends a deposit file for the transaction back through the appropriate network to the cardholder's bank or financial institution. Sixth, the cardholder's bank or financial institution receives the deposit files and takes the requested funds from the cardholder's credit or bank account (via debit card). Seventh, and finally, the cardholder's bank or financial institution sends the funds back through the credit network to the payment processor who then provides the funds to the merchant.

30.   Every merchant using one of these payment networks submits transactions and obtains payments in this same way. Collectively the networks process millions of transactions totaling billions of dollars every year.

### 1. Defendant's Payment Processor and Recurring Transactions

31.   In order to use the electronic payment networks, Defendant contracted with a payment processor, Litle & Co., LLC ("Litle & Co."), which is located in Lowell, Massachusetts and is a wholly owned subsidiary of Vantiv, LLC.[7] Litle & Co. specializes in handling electronic payment transactions for companies that automatically bill customers on a recurring basis and that handle card-not-present transactions, i.e. transactions where the customer uses his or her credit card or debit card without actually presenting the card physically in person, such as when consumers make purchases by telephone or by using the internet.

32.   Defendant processes its charges to consumers, through Litle & Co., as "recurring" transactions. Recurring transactions are essentially a series of transactions between a merchant and a cardholder that are automatically processed at predetermined intervals pursuant to an agreement between the merchant and the

---

[7]   Only acquiring banks are permitted to participate in the electronic payment networks. Since Litle & Co. and Vantiv are not banks they act as agents of Wells Fargo Bank NA and Fifth Third Bank which are acquiring banks.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

cardholder. In order to obtain payments for these recurring charges using the electronic payment networks, Defendant electronically sends payment instructions to Litle & Co. directing Litle & Co. to withdraw funds from a list or batch of consumer accounts which have been designated by Defendant and to transfer those funds into Defendant's account(s). These instructions are identical in format each time they are sent although the amounts may vary. Litle & Co., in turn, initiates the requests for payment through the card associations and to each cardholder's bank. Each respective cardholder's bank then releases the funds to Litle & Co. in the amount requested. Litle & Co. deducts a percentage or fixed amount from the total amount for having processed the transaction and electronically forwards the balance to the Defendant's designated account(s).

33. Every transaction that Defendant processes through Litle & Co. using the electronic payment networks is processed pursuant to the rules of the card associations operating the payment networks. The rules of the card associations seek to balance efficiency necessary to move the millions of transactions per day through the network quickly with protecting the rights of consumers and the integrity of the payment networks. They do this by establishing standards and assurances that the participants in the payment networks must agree to and abide by in using the payment networks.

34. As a payment processor, Litle & Co. is required to enforce the rules of the card associations against its merchant customers, including Defendant, and is itself held strictly liable to the payment networks for each transaction that it presents for payment. Litle & Co. enforces the rules of the electronic payment networks and card associations through its contracts with merchants, which among other things, require merchants to make certain warranties and representations about the transactions they process, including that the transactions they are processing are in compliance with the contracts, all card association rules, and that **they will never allow violations of, and always prevent violations of, card association rules**.

Litle & Co.'s contracts with merchants include both a Merchant Agreement and a separate Merchant Agreement Rules and Regulations document.

### 2.   Defendant's Warrants to its Payment Processor

35.    The most basic and essential requirement of each and every transaction processed through the electronic payment networks is that the transaction be authorized by the cardholder.  The Visa and MasterCard rules ensure cardholder authorization by strictly requiring that a merchant not submit any transactions **that it knows or should have known to be either fraudulent or not authorized by the Cardholder**.[8]  American Express similarly requires **all charges to be specifically approved by cardholders** and prohibits the use of cards for transactions involving fraud.[9] Litle & Co.'s Merchant Agreement expressly incorporates a duty to warrant compliance with these rules, with respect to each transaction processed, and further imposes a duty to never allow, and always prevent, violations of these rules. Similarly, Litle & Co.'s Merchant Agreement Rules and Regulations directly echo the card associations' rules stating that "[Merchants] **will not present** for processing or credit, directly or indirectly, any transaction not originated as a result of a Card transaction directly between you and a Cardholder or **any transaction [the merchant] know[s] or should know to be fraudulent or not authorized by the Cardholder."**

36.    The authorization requirement is not vitiated because a transaction is processed as a recurring transaction, like the transactions processed by Defendant. Access to a credit card or debit card number alone does not constitute authorization. To the contrary, recurring charges can only be made pursuant to an agreement between the merchant and the cardholder.  The rules of both Visa and MasterCard,

---

[8] MasterCard Transaction Processing Rules, December 13, 2013, page 5-20 at 5.12; Visa International Operating Regulations, October 15, 2013, page 368.

[9] American Express Merchant Regulations – U.S., April 2014, page 18 at 3-3.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

which Litle & Co. requires merchants to warrant compliance with, specifically define recurring transactions by express reference to this agreement between the merchant and the cardholder.[10]   Additionally, both Visa's and MasterCard's rules expressly state that the terms of a recurring transaction authorization should be included in a written agreement between the merchant and the cardholder.[11]   Visa also expressly states that a merchant must obtain consent and an authorization from each cardholder for each recurring transaction.[12] American Express's rules similarly state that the merchant "must: obtain the Cardmember's express written consent for the [the merchant] to bill the Card before submitting the first Recurring Billing Charge."[13]   Litle & Co.'s Merchant Agreement Rules and Regulations further reflect the Visa, MasterCard, and American Express rules by specifically requiring that a merchant who processes recurring transactions "**must obtain a written request from the Cardholder for such goods and services to be charged to the Cardholder's account, the frequency of the recurring charge and the duration of time during which such charges may be made.**"

---

[10]   Visa defines recurring transactions as "Multiple Transactions processed at predetermined intervals not to exceed one year between Transactions, representing an agreement between a Cardholder and a Merchant to purchase goods or services provided over a period of time. Visa International Operating Regulations, October 15, 2013, page 1063;  MasterCard defines a recurring payment transaction as "a Transaction made pursuant to an agreement between a Cardholder and a Merchant whereby the Cardholder authorizes the Merchant to bill the Cardholder's MasterCard Account or (where supported) Maestro Account on a periodic basis, such as monthly, quarterly, or annually, without a specified end date." MasterCard Transaction Processing Rules, December 13, 2013, page 5-4.

[11]   Visa International Operating Regulations, October 15, 2013, page 487; MasterCard Transaction Processing Rules, December 13, 2013, page 5-5.

[12]   Visa International Operating Regulations, October 15, 2013, page 487-488.

[13]   American Express Merchant Rules – U.S., April 2014, page 48 at 4.19.

37.     The card association rules also dictate that once a consumer has requested cancellation of a recurring transaction, merchants are prohibited from processing any further recurring transactions.  Visa's rules provide that a merchant **may not "[c]omplete a Recurring Transaction if it receives** a Decline Response or **a cancellation notice from the Cardholder**."[14]  MasterCard's Rules similarly state that a merchant "must not deliver products or perform services pursuant to a recurring payment Transaction arrangement after receiving notification of its cancellation by the Cardholder or Issuer or that the Account on file is not to be honored."[15,16] Finally, American Express's rules state that the merchant "must fulfill Cardmembers' requests that [the merchant] discontinue the Recurring Billing Charges immediately and provide cancellation numbers to them."[17]  Litle & Co.'s Merchant Agreement again incorporates these rules both by requiring warrants that all processed transactions will comply with the card association rules and imposing a duty that merchants never allow, and always prevent, violations of the card association rules.   Additionally, Litle & Co.'s Merchant Agreement Rules and Regulations expressly requires that for recurring transactions, the merchant **must not complete any recurring transaction after receiving a cancellation notice from the cardholder.**

38.     Every merchant agrees to abide by the card association rules relating to authorization and cancellation as well as numerous others, including the strict

---

[14] Visa International Operating Regulations, October 15, 2013, page 488.

[15] MasterCard Transaction Processing Rules, December 13, 2013, page 5-5.

[16] Notably, the MasterCard Transaction Processing Rules do not allow recurring transactions that only constitute partial payment for a single product.  Thus when MasterCard states that products should not be delivered after receiving notice of cancellation, it assumes that each time a recurring payment is charged, it covers the cost of products in full rather than in a partial amount. *See* MasterCard Transaction Processing Rules, December 13, 2013, page 3-13.

[17] American Express Merchant Regulations – U.S., April 2014, page 48 at 4.19.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

prohibition in recurring transactions against structuring transactions to cover only partial amounts of a single purchase.  .  For example, the Visa rules state that a "Recurring Services Merchant must not: . . . Include partial payment for goods or services purchased in a single Transaction."[18]  Likewise, the MasterCard rules state that a merchant is prohibited from effecting a transaction where only a part of the total purchase amount is included on the transaction record and receipt.[19] [20]  Litle & Co.'s Merchant Agreement again requires compliance with these rules. It expressly states that Defendant must never submit transactions "when only part of the total dollar amount is due except when … otherwise allowed by the [card association rules]," and must take steps to prevent it from ever happening.  Finally, Litle & Co.'s Merchant Agreement Rules and Regulations reiterates this rule stating that "[t]he use of multiple sales on one Card, for one purchase, is not permitted."

39.     Finally, merchants are also prohibited from using consumers' credit cards and debit cards and the electronic payment networks for collecting alleged debts.  This prohibition is found in Litle & Co.'s Merchant Agreement, which provides that merchants shall never allow, and always prevent, the use of credit cards or debit cards "to collect or refinance an existing debt."

40.     Every request for payment that Defendant makes through its payment processor and over the electronic payment networks is made pursuant to its contractual warrants to Litle & Co. and the payment network rules, including those set forth above. Thus, each time Defendant submits a batch of transactions to Litle & Co. for processing, it is warranting, as required by its contract, that every transaction in the batch is authorized by the respective cardholder, and that none of

---

[18] *See* Visa International Operating Regulations, October 15, 2013, page 488.

[19] MasterCard Transaction Processing Rules, December 13, 2013, page 3-13.

[20] To the extent the card associations do allow transactions to be structured as installment transactions,

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

the transactions that it is presenting for payment are prohibited by its contract or the rules of the payment processors.  It further warrants that it took affirmative steps to prevent any prohibited transactions from being included in the batch.

41.    Every payment network participant involved in any way in the processing of transactions or the transfer of funds agrees to trust – upfront – that the charges they are being asked to process are legitimate and comply with the rules of the card associations and the warranties and representations made to the payment processor.  Every transaction across each of the networks is treated uniformly in accordance with these rules and each participant can be held strictly liable for non-conforming transactions.  Adherence to these rules is fundamental to the electronic payment networks because if participants lost confidence in the networks and resorted to verifying each of the millions of individual transaction separately, the system would fail.

## C.    Defendant' Fraudulent Electronic Payment Network Transactions

42.    Despite Defendant's contractual representations to Litle & Co. and its obligations as a participant of the electronic payment networks, Defendant knowingly, or at least recklessly, and fraudulently submits transactions for payment to Litle & Co. over the electronic payment networks that violate Defendant's contractual warrants to Litle & Co., its duty to never allow and always prevent violations of card association rules, and the rules of the card associations.  These fraudulent submissions include 1) charges to cardholders for Defendant's continuity plans that are made after Defendant has received notices of cancellation; 2) charges made more frequently than authorized by cardholders; and 3) unauthorized charges for products where Defendant uses pre-acquired account information from unrelated consumer purchases.

///

///

///

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

**1. Defendant Violates Card Association Rules and Breaches its Warrants to its Payment Processor by Processing Post-Cancellation Charges.**

43.     Defendant processes its charges to consumers as "recurring" transactions.  Its transactions are marked as such on consumers' credit card and bank statements.

44.     For each and every transaction Defendant submits to the electronic payment networks through its payment processor, Defendant bears the burden of obtaining authorization.  As described above, this is required by card association rules and Defendant's contract with its processor.  Both the card association rules and Defendant's contract with Litle & Co. also dictate when authorization ends for recurring transactions and strictly prohibit a merchant from continuing to process charges to a card after a consumer has given notice of cancellation.

45.     Defendant's cancellation policy expressly states that consumers will be charged **unless they call to cancel** and that they can call to cancel participation in Defendant's continuity programs.

46.     Notwithstanding the clear rules controlling recurring transactions and Defendant's own cancellation policy, and as part of Defendant's ongoing scheme to make unauthorized charges to cardholders, Defendant continues to make recurring charges to credit and debit cards even after authorization to make those charges has been revoked.  Defendant does this in at least two different commonly occurring situations.  It automatically charges for any balances Defendant claims a consumer may owe, despite not having authorization to take payment for the alleged balances using the electronic payment networks once the consumer has given notice of cancellation.  Defendant also ignores the consumer request to cancel altogether, using access to the consumer's card information to take money from the account for as long as Defendant so desires.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

### a. Charging Without Authorization

47. When a consumer chooses to purchase a "30 day" supply of Defendant's products at the time of her first order, she is automatically enrolled in a continuity program. Pursuant to the continuity program, Defendant sends her an additional supposed "90 day" supply of products, approximately 30 days after her initial order. Defendant automatically charges for the "90 day" supply in three separate transactions (one at the time of shipment and the remaining two charged 28 days and 56 days later).[21] Each charge represents a partial payment of the total cost associated with a "90 day" supply of products. After each of the three payments are automatically charged to the credit card or debit card, the next "90 day" supply of products is automatically sent out to her restarting the three payment automatic billing cycle.

48. As described above, consumers must call Defendant's customer service call center to give notice of cancellation. These call centers are often, if not always, staffed by companies Defendant hires to handle calls. During the time period relevant to this complaint, Defendant contracted with numerous third parties, including EDS, Guthy Renker Fulfillment Services, LLC ("GRFS"), and LiveOps to handle customer services calls, including customer cancellation calls.

49. As the card association rules and the Litle & Co. contract make clear, once a consumer calls to give notice of cancellation, Defendant no longer has authorization to make any charges to the credit or debit card. Nonetheless, Defendant uses the card information to obtain additional payments even after the consumer has called and given notice of cancellation. Defendant does this for any remaining balance that it claims is due for the "90 day" supply of its products. For example, if a consumer requests cancellation after the first payment is made for a "90 day" supply of Defendant's products, Defendant uses the card information to

---

[21] *See* Section IV.C.2., below.

automatically take two more payments. In doing so, Defendant warrants to the processor and the electronic payment network that each of the requested payments is authorized when it is not. Defendant stopped having authorization to submit charges when the consumer gave notice of cancellation.

50.     Even if consumers insist that Defendant is not authorized to make additional post-cancellation charges to their cards, Defendant will continue to use their cards to collect any remaining balance that Defendant claims is due.[22] Indeed, because Defendant's agents and employees at its call centers, including the third party call centers, are instructed not to remove consumers' credit or debit card account information from consumers' payment profiles when they cancel, Defendant – not the cardholder – dictates when authorization to make charges to the card actually stops.

51.     Defendant knows, or is reckless in not knowing, that its unilateral and self-serving interpretation of authorization to take any of these amounts after receiving notice of cancellation is not cardholder authorization, and that any warrant it makes to the processor and the electronic payment networks otherwise is false.

### b.     Ignoring the Cancellation Request

52.     Defendant only gives consumers one method for cancelling Defendant's continuity programs - calling the customer service center. However, Defendant's call centers routinely fail to honor consumer cancellation requests.

53.     When consumers call to cancel their continuity programs, Defendant's

---

[22] Significantly, the rules of the card associations and Litle & Co.'s contracts strictly prohibit splitting the total charges for Defendant's products into multiple charges and payments in this way. Litle & Co.'s contracts also prohibit using consumers' credit cards and debit cards to collect alleged debts. Thus, even if Defendant claims that products previously shipped have only been partially paid for, it may not use the electronic payment networks and access to a cardholder's account information to take any sum after it received notice of cancellation.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

call center agents or employees must make numerous "save" attempts.   A "save" is a term used for a customer service agent dissuading a customer from cancelling his or her continuity program so that the company can continue to send the customer one or more of Defendant's products and continue billing for such products on a monthly basis.   Defendant's employees and agents make these save efforts at Defendant's explicit instruction.

54.   Defendant gives customer service agents at each of Defendant's call centers who handle customer cancellation requests specific "save" targets that they must reach and maintain.   The "save" targets represent a percentage of all customers calling to cancel. If the agents continually fail to meet the "save" targets, they will eventually lose their jobs.

55.   Defendant's "save" target percentages are aggressively set.   Often they cannot be met by call center agents.   Accordingly, at least some call center agents ignore customer requests for cancellation in order to protect their jobs.   In order to meet their goals, the call center agents will tell customers their continuity program memberships have been cancelled, when they in fact have not.   In some cases they will just postpone the accounts for a specified period of months and set them to automatically reactivate later even though the consumer has not authorized either the suspension or the reactivation.   Defendant knows, or is reckless in failing to know, that its customers are not actually able to cancel their accounts when they try to give notice of cancellation. Defendant also knows, or is reckless in failing to know, the tactics its customer service agents use to "retain" consumers.   Consumers have posted a significant number of complaints and articles on the internet describing their inability to cancel Defendant's continuity programs and Defendant's practice of continuing to charge customers after they have requested cancellation of their installment continuity programs.   They describe futile efforts to complain to Defendant about continuing to be charged after they have requested cancellation.   In addition, Defendant and/or its agents

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

record and monitor customer calls to its call centers.   These recordings give Defendant actual information about (a) those consumers who have contacted Defendant to cancel but continue to be charged, and (b) those consumers who have contacted Defendant to cancel but continue to be sent, and charged for, additional supplies of Defendant's products.

56.    Even though Defendant knows, or is reckless in not knowing, that a percentage of its customers have given notice of cancellation that is being ignored or mis-documented because of the way Defendant incentivizes the call operators to meet certain save targets, it fails to distinguish between authorized and unauthorized transactions when it warrants to Litle & Co. for payment using the electronic payment that it has authorization for **all** the transactions in each batch.

57.    Every post-cancellation transaction that Defendant provides to its payment processor for processing accordingly carries with it a fraudulent representation and warrant that Defendant is complying with both the card association rules and its contract with Litle & Co.  Litle & Co. relies on Defendant's fraudulent representations and warranties and processes Defendant's submitted post-cancellation transactions.

58.    Defendant's conduct in continuing to charge consumers for its products after they have requested cancellation has proximately and directly caused harm to Plaintiff and members of the Cancellation Class and the Cancellation Subclass as set forth below.  *See* Sections IV.D. and V. below.

> **2.     Defendant Violates Card Association Rules and Breaches its Warrants to its Payment Processor by Charging Consumers Every 28 Days without Authorization.**

59.    As described above, a merchant like Defendant who wants to process recurring transactions must obtain a written request from the Cardholder setting forth, among other things, the frequency of the recurring charge.  See Section IV.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

B. above (describing the card association rules incorporated into Defendant's contract with Litle & Co.).

60.    At the time consumers purchase Defendant's products, Defendant describes its continuity plan by stating that it will send them a "90 day" supply of its products "every 3 months" which will be charged on a "per month" basis. When consumers order Defendant's products online, they are required to check a box specifically agreeing to being charged on a "per month" basis.    When consumers order Defendant's products over the telephone, Defendant's employees or agents at the call centers use scripted language stating that consumers will be charged on a "per month" basis.  Ultimately, every consumer who receives shipped Defendant's products gets an invoice describing the continuity plan stating that consumers will be charged on a "per month" basis.

61.    In fact, however, Defendant automatically charges consumers for its products on a periodic basis of every 28 days (or less).  The distinction between "per month" and "every 28 days" is material.  By charging consumers on a 28 day cycle, Defendant is able to make one extra charge to consumers each year, charging them 13 times in a 12 month cycle.  Because there are not 13 months in a year, Defendant's claim that it charges consumers "per month" is plainly false. Defendant does not have authorization to charge recurring transactions 13 times per year.    Rather, to the extent Defendant obtains any authorizations for its recurring transactions, it obtains authorizations from consumers to be charged on a "per month" basis, i.e. once every twelve months.  At no time does Defendant ever obtain written or verbal authorizations from consumers to charge them 13 times per year on 28 day intervals.

62.    Because Defendant's purported authorizations to make charges to consumers' accounts are based on false representations about the frequency of charges, i.e. "per month" rather than 13 times per year, such authorizations cannot form the basis for Defendant to truthfully represent and warrant to its payment

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

processor that it has obtained the proper authorizations to charge consumers' credit and debit cards.

63.    Each of the transactions that Defendant submits to its payment processor and into the electronic payment networks nonetheless carries Defendant's warrant that Defendant obtained authorization for each charge to be made and that Defendant is not submitting transactions that it knows, or should know, are fraudulent.  Defendant's warrants, however, are false. Defendant knows or should know that by submitting the recurring transactions at a greater frequency than actually authorized by the consumer that it is violating both its contract with its payment processor and the rules of the card associations.  Litle & Co. relies on Defendant's warrants when processing Defendant's transactions. Defendant's submissions of such unauthorized transactions to Litle & Co. for processing constitutes a fraud on Litle & Co. and on the other participants in the electronic payment networks.

64.    Without use of recurring transactions automatically processed through the electronic payment networks, Defendant would not be able to charge consumers 13 times per year.  A 28 day billing cycle with a payment date that changes each month would prove to be highly impractical, would cause confusion, and would draw awareness to Defendant's practice of charging consumers on a frequency greater than the authorized "per month" basis. Thus, Defendant's use of the electronic payment networks is essential to its scheme to process these unauthorized charges.

65.    Defendant's conduct in charging consumers on a 28 day periodic basis instead of "per month" has proximately and directly caused harm to Plaintiff and members of the Monthly Payment Class and Subclass as set forth below.  *See* Sections IV.D. and V. below.

///

///

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

3. **Defendant Violates Card Association Rules and Breaches its Warrants to its Payment Processor by Using Pre-Acquired Account Information to Make Charges Without Authorization.**

66.    The frequency of a recurring charge is only one of the conditions to which a merchant like Defendant using the electronic payment networks to charge recurring transactions must adhere.  Every merchant must also obtain a written request from the Cardholder setting forth what the actual goods or services are that the consumer is agreeing to purchase.  See Section IV.B., above (describing the card association rules incorporated into Defendant's contract with Litle & Co.).  The rules are clear: possession of consumers' account information does not constitute authorization to bill for other products.

67.    Notwithstanding the Defendant's Merchant Agreement with Litle & Co. and the card associations' rules and regulations relating to authorization of transactions generally and authorizations relating to recurring transactions specifically, Defendant bills its existing customers for products that the consumer has not authorized using the account information Defendant has because of a prior purchase.

68.    For example, when a consumer orders Proactiv products, Defendant uses the consumer credit card and debit card information it is authorized to charge for Proactiv products ("pre-acquired account information")to charge the consumer for other products that he or she did not order, including products from Defendant's other product lines.  The customer only learns about the charges for the products he or she did not order by reviewing his or her credit card statement or bank statement or by (possibly) receiving the unordered products.

69.    Defendant knows or is reckless in not knowing that its authorization to make charges to consumers' accounts is limited to the specific products the consumer agreed to buy, and that any transaction using the pre-acquired account information that Defendant submits for processing without obtaining a separate

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

authorization is unauthorized. Defendant knows or is reckless in not knowing that by submitting the recurring transactions for any charge using the pre-acquired account information it is violating both its contract with its payment processor and the rules of the card associations.

70.     Nonetheless, Defendant submits transactions for payment transaction using pre-acquired account information in lieu of actual authorization and warrants to the processor and to the electronic payment networks that it is complying with their rules and not submitting any unauthorized or fraudulent transactions. Defendant's warrants are, therefore, false.

71.     Litle & Co. relies on Defendant's warrants when processing Defendant's transactions. Defendant's submissions of such unauthorized transactions to Litle & Co. for processing constitutes a fraud on Litle & Co. and on the other participants in the electronic payment networks

72.     Defendant's conduct in charging consumers for additional unordered products without first obtaining their authorization has proximately and directly caused harm to Plaintiff and members of the Pre-Acquired Account Information Class and Subclass as set forth below.  *See* Sections IV.D. and V. below.

### 4.     Defendant Knowingly Violates Card Association Rules and Breaches its Warrants to its Payment Processor.

73.     As a company that submits millions of credit and debit card transactions annually for processing, Defendant knows, or is reckless in failing to know, its obligations under its contract with its payment processor and the rules of the electronic payment networks through which its transactions are processed.

74.     Nevertheless, Defendant has intentionally, or at least recklessly, chosen to continuously and systematically falsely warrant to both its payment processor and the other participants in the electronic payment networks that it is presenting only validly authorized transactions that comply with the rules of its payment processor and the rules of the card associations.  It does so by presenting

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

each post-cancellation and unauthorized transaction to its payment processor for payment who then processes the transactions in the electronic payment networks subject to the rules and restrictions of the card associations.

75.    Defendant processes such transactions purely for its own profit at its customers' expense.    Defendant's practices show that once it has obtained consumers' credit card and debit card information, it treats the information as if it were its own, dispossessing consumers of their right to control the use of their credit card and debit information, and uses the information as it desires without regard for consumers, the warrants and representations it makes to its payment processors, the card association rules, and the other members of the electronic payment networks.

### D.    The Injury to Plaintiff and the Class

76.    Defendant's conduct of defrauding its payment processor is the direct means by which Defendant has been able to cause consumers to make payments to Defendant which they never authorized.  As a direct result of Defendant's unlawful scheme to make unlawful profits by using customer credit card and debit card information to process unauthorized transactions, Plaintiff and every Class member and Subclass member, as set forth below, can demonstrate direct injury.  Such injury includes being automatically charged by Defendant for post-cancellation charges, overcharged through an unauthorized and undisclosed frequency of transactions, and/or charged for unordered products through use of pre-acquired account information.    In addition, consumers have been harmed because Defendant deprived them of their right to control the use of their credit card and debit card information.

77.    Because the amount Defendant takes from each consumer on a periodic basis is small, and because Defendant has vast resources and superior bargaining power, Defendant employs this fraudulent scheme with the hope and expectation that its illegal conduct will go undetected and unpunished.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

78.   Unchecked, Defendant's practices will injure an ever-increasing number of unwitting consumers, inflicting damages of an untold magnitude.

**E.    Facts Specific to Plaintiff**

79.   In or around May or June, 2012, Plaintiff ordered a "30 day supply" of Proactiv products from Defendant by telephone after seeing an advertisement for the products on the television station Univision. Plaintiff paid for the products using a MasterCard debit card, which is connected with her and her husband's Bank of America checking account.   Plaintiff does not recall hearing anything about Defendant's continuity plan at the time she placed her initial order. In total, Plaintiff was charged $28.21 for the products ($19.99 plus tax and shipping and handling). The charge posted to her account on June 14, 2012.

80.   Plaintiff received her initial "30 day supply" of products from Defendant in or around June, 2012.

81.   In or around July, 2012, Plaintiff received a second supply of Proactiv products from Defendant.  The second supply of products was supposedly a "90 day supply."  Plaintiff was not expecting to receive the products, she did not want them, and she did not provide any form of signed or written authorization to Defendant to charge her for them.  A charge of $33.88 from Defendant posted to her Bank of America checking account in connection with the products.  The charge posted to her account on July 11, 2012, only 27 days after the charge made to her account for the first supply of products.

82.   Shortly after receiving the "90 day supply" of Defendant's products, Plaintiff called Defendant and told them that she never ordered the "90 day supply", that she did not want the products, and that she did not want to be charged for the products.  Plaintiff was not informed that she could return the products for a refund, but she was told that her membership, which she had unknowingly been signed up for at the time of her initial order, would be cancelled.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

83. On August 8, 2012, only 28 days after she was last charged for Defendant's "90 day supply" of products and after she requested cancellation of her supposed continuity program membership with Defendant, Defendant again charged Plaintiff's bank account. This time Plaintiff was charged $19.95.

84. On August 27, 2012, Plaintiff was charged again by Defendant, this time in the amount of $22.77. It is unclear from Plaintiff's records what this charge was for and why it was charged to her account. Plaintiff did not authorize this charge and never received any products that corresponded with the charge.

85. In or around August or September 2012, Plaintiff called Defendant again to tell them that she did not want her card to be charged again by Defendant, that she wanted her membership cancelled, and that she had moved to a new address and Defendant should not send any additional products to her old address or her new address.

86. On September 5, 2012, Plaintiff's bank account was again charged by Defendant in the amount of $19.95. This charge was apparently the balance due for the "90 day supply" that Defendant sent to Plaintiff.

87. On October 1, 2012, only 26 days after the September 5, 2012 charge to her account, Plaintiff's bank account was again charged in the amount of $33.88. This charge appears to be the first payment for another "90 day supply" of Defendant's products. Plaintiff never received any products associated with this charge and after she received the initial "90 day supply," she never received any additional products from Defendant.

88. Following the October 1, 2012 charge to her account, Defendant continued to make charges to Plaintiff's bank account using the debit card information that she provided at the time of her initial purchase. Defendant's charges for Proactiv products posted to her account on the following dates and in the following amounts:

October 26, 2012                    $19.95

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

| November 26, 2012 | $19.95 |
| December 18, 2012 | $33.88 |
| January 15, 2013 | $19.95 |
| February 12, 2013 | $19.95 |
| March  19, 2013 | $34.05 |
| April 15, 2013 | $19.95 |
| May 13, 2013 | $19.95 |

89.    In total Plaintiff was charged 14 times by Defendant for Proactiv products in a period of one year.

90.    Plaintiff did not provide a signed or written authorization for Defendant to make any of the charges to her account after her initial purchase of Defendant's products over the telephone.

91.    On October 29, 2012, Defendant posted a credit of $18.78 to Plaintiff's account.  This credit did not match any of the charges made to her account and it is unclear from Plaintiff's records what the purpose of this credit was.

92.    On August 28, 2012, Defendant also began using Plaintiff's debit card to make charges to her bank account for Meaningful Beauty products.  Plaintiff never authorized the charges, never ordered the products, and never received any Meaningful Beauty products from Defendant.  The first charge was for $28.21, which presumably represented an amount for a "30 day supply" of Defendant's products.  Three additional charges for Meaningful Beauty products were made to Plaintiff's account on October 2, 2012, December 18, 2012, and March 15, 2013 in the amounts of $106.41, $106.41, and $106.65 respectively.  Although these new charges were made 77 and 86 days apart, they presumably represented charges for "90 days supplies" of Defendant's products. Plaintiff never authorized the charges,

never ordered the products, and never even received any products associated with the charges from Defendant.

93.     In total, Plaintiff's debit card was charged $284.18 for Proactiv products after she told Defendant it was no longer authorized to charge her for Proactiv products and requested cancellation of her Proactiv membership. Plaintiff's debit card was also charged $347.68 for Defendant's Meaningful Beauty products which she never authorized and which were never ordered and she never received.

94.     After Plaintiff and her husband noticed the continuing charges for Proactiv products and the charges for Meaningful Beauty products on their bank statement, Plaintiff contacted Defendant at one of its call centers to explain that she should not have been charged for the Proactiv and Meaningful Beauty products. Pursuant to the conversation, Defendant mailed Plaintiff a form she could use to seek reimbursement of the improper charges.

95.     Plaintiff filled out the form and thereafter was refunded $139.91.  The refunded amount represents only a portion of the total improper charges made to her account for Proactiv products.  Plaintiff was not reimbursed for any of the charges for Meaningful Beauty products.

## V. CLASS ALLEGATIONS

96.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure Rule 23, on behalf of herself, and the following two Classes and two California-Subclasses of individuals:

**The Cancellation Class**
All persons whose credit cards or debit cards were charged by, or on behalf of, Guthy-Renker for one or more Guthy-Renker products, within the period of four years prior to the filing of this complaint through the present, after such persons requested cancellation of their Guthy-Renker continuity program memberships.

**The Cancellation Subclass**
All persons in the state of California whose credit cards or debit cards were charged by, or on behalf of, Guthy-Renker

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

for one or more Guthy-Renker products, within the period of four years prior to the filing of this complaint through the present, after such persons requested cancellation of their Guthy-Renker continuity program memberships.

**The Monthly Payment Class**
All persons whose credit cards or debit cards were charged by Guthy-Renker on a periodic basis of every 28 days or less for "90-day" supplies of 'Guthy-Renker products at any time during the period of four years prior to the filing of this complaint through the present.

**The Monthly Payment Subclass**
All persons in the state of California whose credit cards or debit cards were charged by Guthy-Renker on a periodic basis of every 28 days or less for "90-day" supplies of 'Guthy-Renker products at any time during the period of four years prior to the filing of this complaint through the present.

**The Pre-Acquired Account Information Class**
All persons for whom Guthy-Renker, or any person acting on behalf of Guthy-Renker, used pre-acquired account information to bill for other Guthy-Renker products without first obtaining their authorization at any time during the period of four years prior to the filing of this complaint through the present.

**The Pre-Acquired Account Information Subclass**
All persons in the state of California for whom Guthy-Renker, or any person acting on behalf of Guthy-Renker, used pre-acquired account information to bill for other Guthy-Renker products without first obtaining their authorization at any time during the period of four years prior to the filing of this complaint through the present.

97.    The following persons are excluded from the Classes and Subclasses: (1) any Judge presiding over this action and immediate members of his or her family; (2) Defendant and its directors or officers; (3) persons who properly execute and file a timely request for exclusion from the Class; and (4) the legal representatives, successors, or assigns of any such excluded persons.

98.    **Numerosity**: The exact number of members of the Classes and Subclasses are unknown and not available to Plaintiff, but the number of members and their geographic dispersion makes individual joinder impracticable, in satisfaction of FRCP 23(a)(1).  On information and belief, there are hundreds of thousands if not millions of consumers who meet the requirements for membership

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

in the Classes and Subclasses.  Members of the Classes and Subclasses can be identified through Defendant's records, including but not limited to Defendant's records of consumers who called to cancel their continuity program memberships and were charged after such call, consumers who were charged on a periodic basis of every 28 days or less by Defendant, and consumers who called to complain about unauthorized charges made to their accounts.

99.   **Typicality:**  The claims of Plaintiff are typical of the claims of the Classes and Subclasses.  Plaintiff is a member of the Classes and Subclasses she seeks to represent.  The claims of Plaintiff and the members of the Classes and Subclasses are based on the same legal theories and arise from the same unlawful and willful conduct, resulting in the same injury to the Plaintiff and the members of the Classes and Subclasses.

100.   **Commonality and Predominance:**  There are many questions of law and fact common to the claims of Plaintiff and the members of the Classes and Subclasses and those questions predominate over any questions that may affect only individual class members within the meaning of FRCP 23(a)(2) and 23(b)(3).

101.   Common questions of fact and law affecting members of the Classes include, but are not limited to, the following:

a.   Whether Defendant violated its contractual warrants to its payment processor and card association rules by submitting post-cancellation charges to consumers' credit and debit cards for processing;

b.   Whether Defendant violated its contractual warrants to its payment processor and card association rules by submitting charges to consumers' credit and debit cards for processing on a 28 day periodic basis;

c.   Whether Defendant violated its contractual warrants to its payment processor and card association rules by submitting for processing

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

unauthorized charges using pre-acquired consumer credit card and debit card account information;

d.  Whether Defendant's submission of post-cancellation charges, charges on a 28 day periodic basis, and unauthorized charges using pre-acquired account information to its payment processor in violation of its contractual warrants constitutes fraud;

e.  Whether Defendant's use of wires in conjunction with its fraudulent practice of submitting post-cancellation charges, charges on a 28 day periodic basis, and unauthorized charges using pre-acquired account information to its payment processor and into the electronic payment networks constitutes wire fraud within the meaning of 18 U.S.C. § 1343;

f.  Whether Defendant's use of the mail in conjunction with its fraudulent practice of submitting post-cancellation charges, charges on a 28 day periodic basis, and unauthorized charges using pre-acquired account information to its payment processor and into the electronic payment networks constitutes mail fraud within the meaning of 18 U.S.C. § 1341;

g.  Whether Defendant is part of an association-in-fact "enterprise" as defined in 18 U.S.C. § 1961(4) with its payment processor (Litle & Co.), the acquiring banks on behalf of which the payment processor works as an agent (Wells Fargo Bank NA and Fifth Third Bank), and/or the call centers hired by Defendant (including EDS, GRFS, and LiveOps);

h.  Whether Defendant's practice of submitting post-cancellation charges, charges on a 28 day periodic basis, and unauthorized charges using pre-acquired account information to its payment processor and into the

electronic payment networks constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1341(5);

i.  Whether Defendant's submission of post-cancellation charges, charges on a 28 day periodic basis, and other unauthorized charges to its payment processor and into the electronic payment networks for collection constitutes the conduct of an enterprise's affairs through a pattern of racketeering activity;

j.  Whether Defendant is a "person" within the meaning of 18 U.S.C. §1961(3);

k.  Whether Defendant has engaged in an ongoing, open-ended scheme, artifice and pattern of racketeering;

l.  Whether Litle & Co. has facilitated the credit card and debit card transactions between Defendant and consumers;

m.  Whether Litle & Co. processes electronic payments from consumers' credit card accounts and bank accounts upon the instructions of Defendant;

n.  Whether, pursuant to the terms of Litle & Co.'s Merchant Agreement and Merchant Agreement Rules and Regulations, Defendant is required to never allow, and always prevent, charges to Plaintiff's and members of the Classes credit cards and debit cards that violate card association rules, state and federal laws, and FTC regulations;

o.  Whether Litle & Co. relied upon Defendant's instructions to take amounts from Plaintiff's and members of the three Classes' accounts as being valid representations that Defendant had legal authorization to collect the charges at issue;

p.  Whether Plaintiff and members of the Classes would have suffered the economic injury at issue (the charges they did not authorize) but for the reliance by Litle & Co.'s on Defendant's instructions as being valid

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

representations that Defendant had legal authorization to collect the charges at issue;

q. Whether the charges to members of each of the Classes' accounts as a result of Litle & Co.'s reliance upon the validity of the Defendant's instructions was the proximate cause of the economic injury suffered by Plaintiff and members of the Classes;

r. Whether Defendant further facilitated an illegal racketeering scheme via (1) the use of telephone wires and computer systems to communicate electronically with its call centers; (2) the use of telephone wires and the internet to communicate with, and take orders and cancellation requests from, customers; (2) wire transfer by Defendant of instructions to Litle & Co. as to which credit card and bank accounts should be charged on which date and in which amount; (3) Litle & Co. then communicating by wire through the electronic payment networks to the Plaintiff's and members of each of the Classes' bank and credit card accounts as to the charges to those bank and credit card accounts; (4) those banks then wiring the money back to Litle & Co., which then takes its percentage of the transaction before wiring the remainder of the money back to Defendant's account(s);

s. Whether as part of the racketeering scheme described herein, Defendant has used the racketeering enterprise to expand its operations, soliciting new members, with the effect of increasing the book value of Defendant's corporate entities;

t. The nature and extent of damages and other remedies to which the conduct of Defendant entitles the members of each of the Classes, and/or which should be assessed against Defendant.

102. Common questions of fact and law affecting members of the California Subclasses include, but are not limited to, the following:

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

a.   Whether Defendant's actions with respect to any or each of the three Subclasses are unlawful and constitute violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

b.   Whether Defendant's actions with respect to any or each of the three Subclasses are unfair within the meaning the California Unfair Competition Law, Cal. Bus, & Prof. Code §§ 17200, *et seq.*;

c.   Whether Defendant's policy and practice of charging Cancellation Subclass members after they requested cancellation is fraudulent, deceptive, misleading and improper;

d.   Whether Defendant's policy and practice of charging Monthly Payment Subclass members  on a 28 day period basis is fraudulent, deceptive, misleading, and improper;

e.   Whether Defendant's policy and practice of charging Pre-Acquired Account Information Subclass members using pre-acquired account information and without first obtaining their authorization is fraudulent, deceptive, misleading and improper;

f.   Whether Defendant failed to accurately describe its cancellation policy in violation of California Business and Professions Code § 17600, *et seq.*;

g.   Whether Defendant accurately described the terms of its continuity programs to members of the Monthly Payment Subclass as required by California Business and Professions Code § 17600, *et seq.*;

h.   Whether Defendant obtained the authorization of members of the Monthly Payment Subclass to charge them on a 28 day periodic basis as required by California Business and Professions Code § 17600, *et seq.*

i.   Whether Defendant obtained the authorization of members of the Pre-Acquired Account Information Subclass to charge them on a

continuous basis as required by Business and Professions Code § 17600, *et seq.*

j.      Whether Defendant's practice of continuing to charge Cancellation Subclass members for Defendant's products after they requested cancellation of their continuity programs constitutes a breach of contract;

k.      Whether Defendant's practice of charging Monthly Payment Subclass members on a 28 day periodic basis constitutes breach of contract;

103.    **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclasses, and have retained counsel competent and experienced in prosecuting complex class action litigation. Plaintiff has no interest antagonistic to those of the Classes or Subclasses. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other class members, and have the financial resources to do so.

104.    **Superiority**: This case is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The injuries suffered by the individual members of the Classes and Subclasses are likely to have been relatively small compared to the burden and expense of individual prosecution of the litigation necessitated by Defendant's actions. Absent a class action, most members of the Classes and Subclasses would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

///

///

///

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

**FIRST CAUSE OF ACTION**
**(Violations of the Racketeer Influenced Corrupt**
**Organizations Act, 18 U.S.C. §§ 1961-1968**
**Against Defendant on Behalf Plaintiff and Each of the Three Classes)**

105.   Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

106.   In relevant part, 18 U.S.C. § 1961(1) defines "racketeering activity" as …(B) "any act which is indictable under any of the following provisions of title 18, United States Code: [including] section 1029 (relating to fraud and related activity in connection with access devices)… section 1341 (relating to mail fraud), section 1343 [18 USCS § 1343] (relating to wire fraud).., and section 1344 [18 USCS § 1344] relating to financial institution fraud…"

107.   18 U.S.C. § 1961(3) defines "person" to "include[] any individual or entity capable of holding a legal or beneficial interest in property[.]"

108.   18 U.S.C. § 1961(4) defines "enterprise" to "include[] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]"

109.   18 U.S.C. § 1961(5) provides that a "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity'[.]"

110.   18 U.S.C. § 1343, the federal wire fraud statute specifically identified by 18 U.S.C. § 1961(1) as an indictable predicate act for purposes of racketeering, provides that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."

111.   18 U.S.C. § 1341, the federal mail fraud statute specifically identified by 18 U.S.C. § 1961(1) as an indictable predicate act for purposes of racketeering, provides that "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.  If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

112.   18 U.S.C. § 1029, a statute concerning fraud and related activity in connection with access devices, identified by 18 U.S.C. § 1961(1) as an indictable predicate act for purposes of racketeering, provides that "Whoever… (2) knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period; (3) knowingly and with intent to defraud possesses fifteen or more devices which are counterfeit or

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

unauthorized access devices;… (5) knowingly and with intent to defraud effects transactions, with 1 or more access devices issued to another person or persons, to receive payment or any other thing of value during any 1-year period the aggregate value of which is equal to or greater than $1,000;… (10) without the authorization of the credit card system member or its agent, knowingly and with intent to defraud causes or arranges for another person to present to the member or its agent, for payment, 1 or more evidences or records of transactions made by an access device… shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section."   18 U.S.C. § 1029 defines the term "access device" as "any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument)" and defines "unauthorized access device as "any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud."

113.   18 U.S.C. § 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

114.   At all times relevant hereto, Defendant was a corporate "person" within the meaning of 18 U.S.C. § 1961(4), with a definable corporate structure and a hierarchy of corporate direction and control, as were each of the other members of the enterprise.

115.   Defendant and each member of the enterprise is legally distinct from the RICO Enterprise alleged herein and has a legal existence separate from its

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

participation in the RICO Enterprise's racketeering activity alleged herein.

116.   At all times relevant hereto, Plaintiff and each member of the Class, was and is a "person" within the meaning of 18 U.S.C. § 1961(3).

A.   **Defendant's Ongoing Pattern of Racketeering**

117.   Within the past four years, Defendant has knowingly, intentionally, and/or recklessly engaged in an ongoing, open-ended scheme, artifice and pattern of racketeering under 18 U.S.C. § 1962(c) by committing the predicate acts of mail fraud within the meaning of 18 U.S.C. § 1341 ("mail fraud")and wire fraud within the meaning of 18 U.S.C. § 1343 ("wire fraud").   Defendant has done so by knowingly and intentionally implementing a scheme to use customer credit card and debit card information to charge for, and collect, unauthorized and forbidden amounts from customers' accounts. Such charging and collecting of unauthorized and forbidden payments includes Defendant's practices of automatically charging for, and collecting, recurring payments associated with Defendant's continuity programs after Plaintiff and members of the Cancellation Class have requested cancellation of their programs; automatically charging, and collecting payments from, the accounts of Plaintiff and members of the Monthly Payment Class in a frequency that exceeds the authorizations obtained by Defendant; and charging, and collecting payments from, the accounts of Plaintiff and members of the Pre-Acquired Account Information Class for products they never even ordered and never authorized Defendant to charge them for.

118.   In addition to the foregoing, Defendant has knowingly committed additional predicate acts affecting interstate or foreign commerce with the intent to defraud: (1) trafficking in or using one or more access devices (i.e., any card, plate, code, account number or other means of account access that can be used alone or in conjunction with another access device to obtain money, goods, services or any other thing of value, or that can be used to initiate a transfer of funds), without authorization and thereby obtaining something of value aggregating at least $1,000

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

during any 1-year period, (2) possessing fifteen or more access devices which are unauthorized access devices; (3) effecting transactions with one or more access devices issued to another person or persons, to receive payment or any other thing of value during any 1-year period the aggregate value of which is equal to or greater than $1,000; and/or (4) causing or arranging for another person to present to a credit card system member or its agent, for payment, 1 or more evidences or records of transactions made by an access device, in violation of the Credit Card Fraud Act of 1984, 18 U.S.C. § 1029 ("Fraud and related activity in connection with access devices.").

119.   Beginning at a date currently unknown to Plaintiff but at least four years prior to the filing of this complaint, Defendant, with potentially unnamed co-conspirators, adopted and implemented a centrally managed, uniform, nationwide scheme to obtain unauthorized and forbidden money and payments from consumers' credit card and bank accounts by fraudulently representing to its payment processor and the other participants of the electronic payment networks that it was presenting each of its transactions for processing in compliance with its contract with its payment processor, the rules of the card associations governing the transactions, and in compliance with state and federal laws.  By doing so, Defendant has been able to extract significant profits from Plaintiff and members of the Classes, without being so entitled.

120.   As described in this complaint, Defendant did not have or properly obtain authorization from Plaintiff and members of the Classes to make these charges; knew it did not have authorization, or at best, was reckless in failing to know whether it had authorization; knew or should have known that processing the transactions would violate the warrants and representations it makes to its payment processor and the rules of its payment processor including its duty to never violate, and always prevent violations of prohibited transactions; and knew or should have known that processing the transactions would violate the rules of the card

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1   associations and/or state or federal laws. Nevertheless Defendant warranted that it
2   was in compliance with its contract with Litle & Co. and in compliance with card
3   association rules when it instructed its payment processor to take payments from
4   the accounts of Plaintiff and members of the Classes.

5       121.   At all times relevant hereto, Defendant perpetrated this pattern of mail
6   fraud, wire fraud, and/or fraud and related activity it connection with access
7   devices through its association-in-fact enterprise with (a)  its payment processor,
8   Litle & Co.; (b) the other participants in the electronic payment networks including
9   the acquiring banks that Litle & Co. partners with and acts as an agent of to
10  process transactions; and (c) companies which defendant has hired to answer
11  customer telephone calls, orders, and service inquiries including EDS, GRFS, and
12  LiveOps; Together they all formed a racketeering enterprise to effectuate the
13  predicate acts of mail fraud, wire fraud, and/or fraud and related activity in
14  connection with access devices under the control and direction of Defendant.

15  **B.    The RICO Enterprise**

16      122.   The RICO enterprise consists of Defendant, Defendant's payment
17  processor, Litle & Co., the other participants in the electronic payment networks
18  including the acquiring banks that Litle & Co. partners with and acts as an agent of
19  to process transactions (Wells Fargo Bank NA and Fifth Third Bank), the call
20  center companies hired by Defendant including EDS, GRFS, and LiveOps, and
21  each of their agents and employees.

22      123.   The association-in-fact enterprise between Defendant, Litle & Co., the
23  other participants in the electronic payment networks including the acquiring banks
24  that Litle & Co. partners with and acts as agent of, and the call center companies
25  hired by Defendant  is separate and distinct from the pattern of racketeering
26  activity described herein.  The associated-in-fact entities forming the enterprise
27  conduct lawful business activity unrelated to the illegal wire fraud, mail fraud,
28  and/or fraud and related activity in connection with access devices constitutes the

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

pattern of racketeering activity alleged herein.

124. As a limited liability company, Defendant has a legal existence separate from its participation in racketeering. In addition to its illegal acts of racketeering, Defendant also conducts other lawful business activity.

125. The RICO enterprise described herein is controlled, managed and directed by Defendant for the common purpose of making profits for Defendant. These profits include the illicit profits described herein as to which Litle & Co. and the other members of the electronic payment networks are unknowing or unwitting participants.

**C.    The Rackeetering Scheme**

126. Beginning at a date currently unknown to Plaintiff, but at least four years before the filing of this complaint, Defendant implemented a scheme to collect credit and debit card information from consumers and use that information to charge for, and collect, unauthorized and forbidden amounts from consumers' accounts.

127. Defendant contracted with Litle & Co. to facilitate the credit card and debit card transactions between Defendant and its customers. Litle & Co. profits off of the transactions by charging and collecting from Defendant a per transaction fee.

128. Defendant also hired and contracted with companies that provide third party call center services. These companies include EDS, GRFS, and LiveOps. Among other things, these companies have collected consumer credit card and debit card information, signed consumers up for Defendant's continuity programs, and handled consumer cancellation calls and requests related to Defendant's continuity programs.

129. Upon the instruction of Defendant, Litle & Co. has processed for Defendant transactions that have not been authorized by consumers and charges that are prohibited under Litle & Co.'s contract with Defendant and the rules of the

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

card associations governing the transactions. These transactions include: post-cancellation charges as set forth in paragraphs 43 through 58 above,  charges made to consumers' accounts on a 28 day periodic recurring  basis as set forth in paragraphs 59 through 65 above, and charges for which defendant used pre-acquired account information and did not obtain authorization as set forth in paragraphs 66 through 72 above.

130.   Without the processing of the credit card and debit card transactions by Litle & Co., or by a similar payment processor, Defendant would be unable to effectuate the fraud of continuing to charge its customers after they have requested cancellation of their continuity program memberships, charging consumers on a 28 day periodic basis rather than a "per month" basis, and using pre-acquired account information to make unauthorized charges to consumer accounts.

131.   In furtherance of its scheme to defraud, Defendant uses wires within the meaning of the federal wire fraud statute.  Such use of the wires includes Defendant's act and practice of sending instructions to Litle & Co. to charge each consumer's account via electronic wires, Litle & Co.'s subsequent use of the wires to electronically process each credit card and debit card transaction, use of wires by each consumer's bank or credit card issuer or institution to transmit funds from each consumer's account back to Litle & Co, and use of wires by Litle & Co. to transmit funds into Defendant's account.  Consumers' accounts would not be charged without Defendant providing the information to Litle & Co. electronically and without Litle & Co.'s electronic processing of the transactions.

132.   The wires are used to process transactions of consumers who have requested cancellation and who Defendant has no right to charge and who owe Defendant no additional sums of money, members who are being charged on a 28 day periodic basis when they have not given Defendant authorization to charge them at such a frequency, and members for whom Defendant is billing using pre-acquired account information but for whom Defendant never obtained

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

authorization to make such charges.

133.   Wires are also used to accept orders and communicate with each of Defendant's customers via the internet and/or telephone.   In addition, wires are used to accept customer cancellation requests via telephone.   Defendant's customers can only cancel their memberships in Defendant's continuity programs via telephone.

134.   Litle & Co. and the other electronic payment network participants reasonably rely on the instructions issued by Defendant as being accurate representation that Defendant is owed charges it seeks to process, that it has obtained the proper authorizations to make such charges to consumers' accounts, and that it is following all rules set forth in Litle & Co.'s contract and the rules of the card associations.   In fact however, as set forth in paragraphs 42 through 75 above, Defendant is not owed some of these charges that it submits to Litle & Co., has not obtained the proper authorizations to make the charges, and is making the charges in a manner that does not comply with its Merchant Agreement with Litle & Co. or the rules of card associations.   Nevertheless, Litle & Co. acts in reliance on Defendant's instructions, collects the sums identified in the wire instructions, and then notifies Defendant that the sums have been collected and deposited in Defendant's account.  As a result, Defendant has committed wire fraud.

135.   Defendant has also used, and continues to use, the mail in connection with its fraudulent scheme, detailed above, including use of the United States Postal Service to mail its products to each consumer who orders Defendant's products.   As a result of Defendant's use of the mail in connection with its fraudulent scheme, Defendant has also committed mail fraud.

136.   In addition to mail fraud and wire fraud, Defendant has committed additional predicate act violations, specifically violations of 18 U.S.C. § 1029.  In violation of 18 U.S.C. § 1029 Defendant has knowingly and with intent to defraud used thousands, if not millions of unauthorized access devices during each of the

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

last four years, obtaining significantly more than an aggregated value of $1,000 during each of those years; continuously possessed and used fifteen or more unauthorized access devices; knowingly and with intent to defraud has effected transactions, with 1 or more access devices issued to another person to receive payment in aggregation of significantly more than $1,000 in each of the last four years, and has without the authorization of the credit card system member or its agent, knowingly and with intent to defraud caused or arranged for another person to present to the member or its agent, for payment, 1 or more evidences or records of transactions made by an access device.

137.   In the past four years, the pattern of racketeering carried out by Defendant and its association-in-fact with Defendant's call centers and Litle & Co. of charging consumers after they have requested cancellation of their continuity program memberships, charging consumers on a 28 day periodic basis when they have not authorized charges on that frequency, and using pre-acquired account information to make unauthorized charges to consumer accounts has yielded illicit profits to Defendant in an amount to be proven at trial.  Every year that this illegal activity continues, Defendant adds to its fraudulently obtained revenues.

**D.**     **The Effect of the Racketeering Scheme on Interstate Commerce**

138.   At all relevant times, the enterprise was engaged in, and the racketeering activities affected, interstate commerce within the meaning of 18 U.S.C. § 1962(c).

139.   As part of the racketeering scheme described herein, Defendant has used the racketeering enterprise to increase its profits to the detriment of consumers nationwide.  The enterprise acted on a national level, interacting with, and processing transactions associated with, individuals throughout the continental United States.

140.   The enterprise also directly engaged in the production, distribution, or acquisition of goods throughout the United States.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

141.   The interstate commerce requirement of a RICO claim is also satisfied here because the claims arise out of, and are based upon, violations of federal criminal statutes and/or the use of mail, interstate wires, and other instrumentalities of interstate commerce in conjunction with the process of obtaining, transmitting, billing and collecting unauthorized charges to the members of the Classes, in furtherance of the racketeering scheme as alleged herein above.

**E.**     **Injury to Plaintiff and Members of the Classes by Reason of the Pattern of Racketeering Activity**

142.   Defendant misrepresented its authority to request payment from the accounts of Plaintiff and the class members, which is the direct and proximate cause of Plaintiff's and class members' injury and damages—the unauthorized taking of amounts that were not due and owing from the Plaintiff or the members of the Classes and the taking of funds from their accounts in violation of the built in consumer protections of the electronic payment networks.

143.   Defendant's misrepresentations, which were the direct cause of Plaintiff's and Class members' injuries, were made to its payment processor and not to Plaintiff and members of the Classes.   Defendant's representations and warrants to its payment processor occurred without the involvement of Plaintiff and members of the Classes.   Defendant was able to take money from Plaintiff's and Class members' credit card and bank accounts automatically without any involvement of Plaintiff and Class members through use of their credit card and debit card information via the electronic payment networks. The payment processor relied upon Defendant's representations and warranties regarding authorization and compliance with its contract and rules of the card associations for purposes of RICO causation.   Plaintiff and Class members' reliance on any representations for the purposes of RICO causation is accordingly irrelevant.

144.   But for Defendant's misrepresentation concerning its authorization to take payments from the bank and credit card accounts of Plaintiff and class

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

members, the processor, Litle & Co., would not have processed and effected the charges, withdrawing moneys from Plaintiff's and class members' bank and credit card accounts.

146. Plaintiff and class members are the only direct victims of Defendant's wrongful and unlawful conduct; moneys that were not due and owing were withdrawn from their bank and credit card accounts without authorization.

146. As the direct victims of Defendant's wrongful and unlawful conduct, Plaintiff and the members of the Classes, have been injured in an amount according to proof, but believed to be in the millions of dollars over the past four years. Damages will be calculated with greater accuracy according to information in Defendant's records. Because the information necessary to calculate damages is contained in Defendant's records, the Court will not need to adopt complicated rules apportioning damages in order to obviate multiple recoveries. Plaintiff will seek leave of Court to amend this Complaint to set forth the exact amount thereof when the same is ascertained.

147. The pattern of racketeering activity, as described herein, is continuous, ongoing, and will continue unless Defendant is enjoined from continuing these racketeering practices. Defendant has consistently demonstrated its unwillingness to discontinue the illegal practices described herein, and continue their pattern of racketeering as of this moment.

148. As a direct and proximate result of the racketeering activities of Defendant, as described herein, Plaintiff, on behalf of herself and the absent Class members, are entitled to recover treble damages for the injuries they have sustained, according to proof, restitution, as well as costs of suit and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

149. As a direct and proximate result of the racketeering activities of Defendant, as described herein, Plaintiff, on behalf of herself and the absent Class members, are entitled to an Order, pursuant to 18 U.S.C. § 1964(a), enjoining and

prohibiting Defendant from further engaging in the enterprise's unlawful conduct.

150.   Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

## SECOND CAUSE OF ACTION
**(Violation of the Unfair Competition Act, Business and Professions Code § 17200, et seq.**
**on Behalf of Plaintiff and Each of the Three Subclasses)**

151.   Plaintiff incorporates by reference paragraph numbers 1 through 104 as if fully set forth herein and further alleges as follows.

152.   By committing the acts and practices alleged herein, Defendant has engaged in unfair, unlawful, and fraudulent business acts or practices and unfair, deceptive, untrue, or misleading advertising in violation of California's Unfair Competition Law, Business and Professions Code § 17200, *et seq.* ("UCL") as to Plaintiff and the Class as a whole.   Defendant's violations of the UCL include, but are not limited to, the following:

153.   **Unlawful Conduct:** Defendant's business practices, as alleged herein, are unlawful within the meaning of California Business & Professions Code § 17200 because they violate other federal and state statutory laws.

154.   Specifically, Defendant's acts and practices including Defendant's acts and practices of charging consumers for Defendant's products after they have requested cancellation, charging consumers on a 28 day periodic basis rather than on a "per month" periodic basis, and using pre-acquired account information to make unauthorized charges are unlawful because they each violate or have violated one or more of the following federal laws:

a.   The Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968;

b.   The federal mail and wire fraud statutes, 18 USC § 1341 and 18 USC § 1343;

c.   The Credit Card Fraud Act of 1984, 18 U.S.C. § 1029; and

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

d.  California's laws relating to contracts.

155.  Defendant's acts and practices including Defendant's acts and practices of charging consumers for Defendant's products after they have requested cancellation, charging consumers on a 28 day periodic basis rather than on a "per month" periodic basis, and using pre-acquired account information to make unauthorized charges are also unlawful because they violate or have violated California Business and Professions Code § 17600, *et seq.*

156.  **<u>Unfair Conduct:</u>** Defendant's acts and practices, as alleged herein, are "unfair" business practices within the meaning of California Business & Professions Code § 17200 because they are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

157.  Defendant's business acts and practices, as set forth herein, are unfair because, *inter alia*, Defendant caused charges to be billed and collected from Plaintiff and members of three Subclasses that Plaintiff and members of each of the three Subclasses never authorized. Defendant was prohibited from collecting pursuant to its agreement(s) with its payment processor and the rules of the card associations governing payment card transactions.

158.  Plaintiff and members of the Cancellation Subclass never agreed with Defendant that Defendant could continue charging their credit and debit cards after they requested cancellation of any supposed continuity program memberships with Defendant.

159.  Plaintiff and members of the Monthly Payment Subclass never agreed that Defendant could charge them on a 28 day periodic basis, or 13 times per year, but rather agreed that Defendant could charge them on a per month basis.

160.  Finally, members of the Pre-Acquired Account Information Class never provided Defendant authorization to charge them for the additional products for which they were charged.

161.  Defendant's practice of charging members of each of the Subclasses

without their authorization was and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to each and all of them.

162. **Defendant's Fraudulent Acts and Practices** Defendant's acts and practices as alleged herein are "fraudulent" within the meaning of California Business & Professions Code § 17200 because they have a likelihood of confounding an appreciable number of reasonably prudent consumers exercising ordinary care.

163. Defendant's conduct, as set forth above, is likely to deceive members of the public and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

164. Defendant's business practices are fraudulent because, *inter alia*, 1) Defendant fails to inform consumers that there are any terms and conditions associated with cancelling their continuity programs including that they will continue to be liable for additional payments associated with their continuity programs after they have requested cancellation; 2) Defendant informs consumers that they will be charged for its continuity programs on a per month basis and receive 90 day supplies of Defendant's products when in fact Defendant charges consumers on a 28 day or less periodic basis, allowing Defendant to charge consumers 13 times annually, and provides consumers with the supposed "90 day" supplies every 84 days or less. Plaintiff and putative class members never agreed to, or authorized, charges on the frequency at which they are made by Defendant; 3) Defendant uses consumers' credit card and debit card information to make charges for products they never purchased and which they never authorized. By doing so, Defendant fraudulently uses their payment card information.

165. Defendant's failure to disclose each of its hidden schemes is material because reasonable persons would attach importance to the existence of each of the schemes in conducting their transactions with Defendant.

166. Plaintiff and members of each of the three Subclasses have lost money

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

from their bank accounts or credit card accounts as a result of Defendant's unlawful, unfair, and fraudulent conduct.

167.  The injury to Plaintiff and members of the Subclasses greatly outweighs any alleged countervailing benefit to consumers or competition under all of the circumstances.  The injury clearly constitutes substantial injury as the consumers are being charged without authorization and pursuant to terms that are contrary to those they agreed to, to the extent they agreed to any terms with Defendant at all relating to the charges. There is no benefit to the consumers by allowing Defendant to knowingly misuse the electronic payment networks without disclosing material facts that a reasonable consumer would want to know about how they got their bank and card information and that they are making charges to their accounts.

168.  Plaintiff and the California Subclasses ask that this Court restore the money improperly taken from them by Defendant and enjoin Defendant from continuing its illegal practices and pay attorneys' fees and costs pursuant to, inter alia, Cal. Civ. Proc. § 1021.5.

169.  Plaintiff and members of the Subclasses and the general public are therefore entitled to the relief described herein.

### THIRD CAUSE OF ACTION
**Violation of California Automatic Renewal Law,
Bus. and Prof. Code § 17600, *et seq.*
(On Behalf of Plaintiff and Members of Each of the Three Subclasses)**

170.  Defendant sells products through continuous service memberships within the meaning of Business and Professions Code § 17601(e).

171.  Plaintiff and members of the Cancellation Subclass are consumers within the meaning of Business and Professions Code § 17601(d).  The products sold by Defendant are consumer products and are not of the type that would be used by businesses.

172.  Defendant describes it cancellation policy as "cancel anytime" and

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

informs consumers that they only thing they need to do in order to cancel their continuous service memberships is to call Defendant. Defendant fails to inform them that after they have requested cancellation, they will continue to be charged for Defendant's products, including charges remaining for any products that Defendant has already sent. Accordingly, Defendant has failed to accurately describe its cancellation policy in violation of California Business and Professions Code § 17600, *et seq.*;

173.  Defendant also fails to provide consumers, including Plaintiff and members of the Cancellation Subclass, with a cancellation policy that accurately describes the terms of cancellation in a document, form, or other manner that is capable of being retained by Cancellation Subclass members as is required by Business and Professions Code § 17602(a)(3).

174.  Defendant also failed to clearly, conspicuously, and accurately disclose the terms of its continuous service agreements to Plaintiff and members of the Monthly Payment Subclass, by among other things, failing to disclose that it charges consumers on a 28 day recurring basis resulting in 13 annual charges. Defendant further failed and continues to fail to inform consumers that under its continuous service agreements, it provides its "90 day" supplies of products to consumers every 84 days or less and at a frequency that exceeds "every three months."

175.  Additionally, Defendant failed to provide Plaintiff and members of the Charged Every 28 Day Subclass with an accurate description of its continuity programs in a manner that  could be retained by them as required by Business and Professions Code § 17602(a)(3).

176.  Defendant also failed to present the terms and cancellation policy of its continuous service agreements to members of the Pre-Acquired Account Information Subclass as required by Business and Professions Code § 17600, *et seq.*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

177. By failing to clearly, conspicuously, and accurately provide all relevant terms to members of the Cancellation Subclass and the Charged Every 28 Days Subclass, and failing to provide any terms of its continuous service agreements to members of the Pre-Acquired Account Information Subclass, Defendant has failed to obtained affirmative consent to the terms of its continuous service agreements within the meaning of Business and Professions Code § 17602.

178. Accordingly, Defendant is liable to Plaintiff and members of each of the Subclass members for restitution, in an amount to be proven at trial, for charging consumers when they owed no payment obligations to Defendant as set forth in Business and Professions Code § 17604.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and members of each of the three Classes and each of the three Subclasses, requests the following relief:

1. That the Court enter an order certifying the Classes and Subclasses described above and appointing Plaintiff as the representatives of the Classes and Subclasses, and appointing counsel for Plaintiff as lead counsel for the Classes and Subclasses;

2. That the Court enter an order declaring that the actions of Defendant, as set forth above, violate the Racketeer Influenced Corrupt Organization Act, 18 U.S.C. § 1961, *et seq.*

3. That the Court enter an order declaring that the actions of Defendant, as set forth above, violate California Business and Professions Code § 17200, *et seq.*

4. That the Court enter an order declaring that the actions of Defendant, as set forth above, violate California Business and Professions Code § 17600, *et seq.*

5. That the Court enter an order permanently enjoining Defendant's continuing violations of law and any similar future violations of applicable law;

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

6.      That the Court enter an order awarding compensatory damages, treble damages, punitive damages, restitution, and any and all other forms of monetary and non-monetary relief recoverable under applicable law including the Racketeer Influenced Corrupt Organization Act, 18 U.S.C. § 1961, *et seq.*, California Business and Professions Code § 17200, *et seq.* and California Business and Professions Code § 17500, *et seq.*;

7.      That the Court enter an order awarding Plaintiff and the Classes and Subclasses payment of their costs and expenses incurred in prosecuting this action;

8.      That the Court enter an order awarding Plaintiff and the Classes and Subclasses payment of their attorneys' fees in prosecuting this action;

9.      That the Court award Plaintiff and the Classes and Subclasses pre- and post- judgment interest; and

10.     That the Court award such other and further relief as may be necessary or appropriate.

Dated:  July 10, 2014                       Respectfully submitted,

                                            **KELLER GROVER LLP**


                                            By:    /s/ *Jeffrey Keller*
                                            _____
                                                    JEFFREY F. KELLER

                                            Attorneys for Plaintiff and the Putative
                                            Classes and Subclasses

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated:  July 9, 2014

Respectfully submitted,

**KELLER GROVER LLP**

By:  /s/ *Jeffrey Keller*

JEFFREY F. KELLER

Attorneys for Plaintiff and the Putative
Classes and Subclasses

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861